First case this morning is case number 4-1-0-0-9-3-2, People v. Croom. For the appellant, Lauren Bowser. And for the appellee, Kathy Shepard. You may proceed. Good morning, your honors. You may please the court. Lauren Bowser from the State Appellate Defender's Office on behalf of Duane Croom. I would like to focus this morning on the constitutionality of the transfer statute. If your honors have any questions about the second issue, I'd be happy to discuss that as well. Keep your voice up just a little bit, please. The automatic transfer provisions under which Duane Croom was transferred from juvenile court to adult court violate the United States Supreme Court's directive in Graham v. Florida that criminal statutes take into account a child's age. In Illinois, there are three separate methods for transferring a juvenile to adult court, the discretionary, the presumptive, and the mandatory transfer provisions. Two of these three transfer provisions conform with the dictates of Graham that criminal statutes take into account age. However, the automatic transfer statute under which Duane was transferred to adult court does not. After Graham, while not disposited, age must be considered before a juvenile can be transferred, prosecuted, and sentenced as an adult. Hasn't the First District already addressed this precise issue? Yes, there are two decisions out of the First District that have found that have rejected similar due process challenges. However, neither People v. Salus nor People v. Jackson, which rejected these challenges, found that the Graham-Broker reasoning extended beyond the Eighth Amendment or beyond sentencing statutes. However, we know from the United States Supreme Court itself that it has been extending this reasoning beyond simply Eighth Amendment challenges. In 2011, in J.D.B. v. North Carolina, the United States Supreme Court relied on its reasoning in Graham and Roper to find that age is a factor in the Miranda custodial analysis. It drew directly on the Graham reasoning, underscoring the special vulnerabilities of children, and found that it's applicable in this context as well. Just to be clear, then, your argument is that the First District cases were wrongly decided? Wrongly decided, because neither of those cases dealt with J.D.B. Neither cited J.D.B., distinguished J.D.B. Therefore, they just simply did not recognize that the Supreme Court has been extending this rationale beyond the Eighth Amendment and is itself using its reasoning to expand these rights for kids in contexts that we maybe thought were already decided. In J.D.B., the court concluded that these are common sense principles that apply broadly to children as a class. So they do extend broadly beyond merely sentencing. After Graham, it's impermissible to automatically deem children morally culpable as adults. The legislature remains free after Graham to transfer juvenile offenders to adult court. We still have mechanisms to transfer juvenile offenders to adult court. What is impermissible after Graham, however, is to do so without any consideration of whether that child should be tried as an adult. Our mandatory transfer statute is based on an irrebuttable presumption that 15- and 16-year-olds who commit certain crimes are as morally culpable as adults. This is a distinction that the Graham-Roper reasoning after Graham and Roper is improper, because of the notion that youthfulness must be considered in criminal statutes. So in this case, Dwayne was transferred to adult court automatically, no consideration of his age. He's automatically now subject to adult sentences, no special sentences available because of his age. And the mitigating factors under the Code of Corrections do not require that the court look at age. So the scheme under the mandatory statute never requires that any judge look at the defendant's age and consider that as a factor, which is exactly what the Graham court said was impermissible. So the maximum sentence for a juvenile who commits murder would have been commitment until 21, whereas the minimum sentence for a child who's committed a murder in adult court is 20 years, regardless of his age. In this case, Mr. Croom got 50 years, and at no point was the court ever required to take that into consideration. Maybe I missed it, but how does J.S. help you? The J.S. Illini Supreme Court case? So J.S. held that due process was not violated by this distinction because the legislature has decided that 15- and 16-year-olds can be deemed as equally culpable. But J.S. was 20 years ago, before the last decade, when the United States Supreme Court has been finding that age must be considered in criminal procedure laws. I mean, Graham itself states laws that fail to take into account a defendant's age are flawed. So in both Roper and Graham, the U.S. Supreme Court drew 18 as the line that we consider adults, essentially saying you can no longer make these distinctions between 13, 14, 15, 16. Again, they said these apply broadly to children as a class, and that class is any child under the age of 18. J.S. didn't involve the issue of trial period, did it? It's not. So J.S. never was faced with Graham rationale. They didn't have to rule on this question. So in Jackson, the court held that J.S. was still good reasoning, the first district case Jackson, that J.S. was still good law because the J.S. court found that no classifications were created where all 15- and 16-year-olds had to be transferred. There's no distinction there. But again, after Graham, we know that's impermissible to draw a distinction amongst youths. All youths have a right to vote. The Roper case involved a death sentence. Correct. And the Graham case involved a life sentence. Correct. So neither one of those dealt with the issue we have here. Exactly. And Mr. Krim is not raising an Eighth Amendment challenge to the length of a sentence, per se. He's not arguing that he could never be sentenced to 50 years. Only that the sentence has to first come with consideration of his age and whether he should be in adult court in the first place. What case best supports your argument? As far as the transfer statutes? This particular issue hasn't been litigated since the Graham decision came down or since the J.D.B. decision came down. I'm aware of a pending case in New Jersey, but this is an issue of first impression, really, besides the two Illinois cases in the First District. These psychological and physical differences that the Supreme Court has been relying on in the past decade in moving the law forward with respect to juveniles and carving out separate jurisprudence with respect to juveniles is now a matter of legal precedent. It should be considered in the context of whether an automatic transfer statute is constitutional. In essence, Mr. Krim has a substantive due process right after Graham to have his youthfulness considered before he can be prosecuted and sentenced as an adult. That didn't happen here, and therefore we respectfully request that your Honor's find the statute unconstitutional and hold that he's entitled to a transfer hearing or at least find he's stated the gist of a constitutional claim such that his post-conviction petition should be remanded for further proceedings. Do your Honors have any additional questions? I don't see any, but you will have rebuttal, so you'll hear from me again. Ms. Shepard. May it please the Court, Counsel. As the First District correctly held in Jackson and Salas, and as the State argued in our brief, Roper and Graham deal with the Eighth Amendment, deal with challenge under the Eighth Amendment saying that certain severe sentencing schemes that apply to juveniles and impose, let's see, it was the death penalty in Roper and life without parole in Graham were cruel and unusual punishment. That issue, of course, is not involved here. Totally different test. The test is the Rational Relationship Test, which applies to substantive due process claims. That test was applied by the Illinois Supreme Court in JS, and the Illinois Supreme Court carefully examined this statute, which does not apply to all juveniles. It applies only to juveniles who are 15 or 16 years old. It also does not apply to all offenses, but only to certain particularly serious offenses. And the Court held in JS that this statute, which creates a limited exception to juvenile court jurisdiction, is rationally based on the age of the offender and the threat posed by the offense to the victim in the community because of its violent nature and the frequency of commission. The Court ruled that the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety, and general welfare, and so comported with substantive due process guarantees. The U.S. Supreme Court's statements in Roper and Graham simply do not address that holding, and nothing in Roper, Graham, or the Court's references to them in JDB, which concerns whether a juvenile's age is relevant in determining whether he's in custody for Miranda purposes, affects the validity of the holding in JS, or the analysis used in reaching it. The kinds of statements that a defendant relies on in Roper and Graham concerning juveniles as a class or sentencing simply do not come into play in applying the rational relationship test in a due process context. The State would also point out that, as we explained in our brief, some of those statements were mischaracterizations and they certainly all were taken out of context. For example, defendant asserts that Roper and Graham show that the penological justifications that provide the rationale for adult sentencing simply do not apply to juvenile offenders. Of course, the Court in Roper and Graham did not say that. Instead, the Court held that those penological justifications for the death penalty in Roper, and life without parole in Graham, did not justify those sentences for juvenile offenders in Roper and juvenile non-homicide offenders in Graham. Again, different characterization. We have to remember what those cases actually did hold, and I won't go through all of the refutations of defendants' characterizations that I made in my brief. That's clearly stated there. Really, the First District said it in both Jackson and Salas. It's very clear that those cases, Roper and Graham, that dealt with different constitutional provisions, applied a different test, that did look at juveniles' characteristics, at the justifications for sentencing, those simply do not come into play in this analysis, and there's nothing out there that says that they would or should. There's nothing that would provide this Court a basis for calling into question J.S. or the many decisions of the Illinois Supreme Court after that, holding the various permutations of this statute. Is it fair to say that J.D.B. expanded the analysis in Roper and Graham? I wouldn't say so, Your Honor. I would say that it simply referred to certain statements in Roper and Graham that it found helpful in analyzing whether a juvenile would feel as if he were free to leave, whether or not he would be free to leave in a Miranda custody analysis, and that goes to the characteristics of the juvenile. Characteristics of the juvenile do not come into play in applying the Rational Relationship Test or any process competence. Do you think there's any difference between a kid who is one day short of being 18 and a kid who is 16 plus one day? I mean, the two-year span for those children, there is a big difference, isn't there? I guess in a general sense, and then I guess that's what defendant wants us to do, wants Your Honors to do, is to look at these things in a general sense. Well, we can make all sorts of comments about juveniles as a class or the differences between juveniles at certain ages. The legislature in the statute said that, well, if you're 15 or 16, that's different from being a younger age, that we look at that in a different context, and for those offenders who are older, that's part of the analysis and part of the justification for allowing this automatic transfer. And the legislature made that determination. The Supreme Court in general said that's rational, and that's only part of the analysis. Everything the legislature does is rational? I'm sorry? Everything the legislature does is rational? Oh, I certainly would never say that, and I'm sure that no one would agree with that blanket statement. So unless the Court has any further questions on Issue 1, I'd like to just make a few comments about Issue 2. See, the state in Issue 2, we quoted in our brief the standards for judging a motion for leave to file a successive petition, as stated by the Supreme Court in Pitts and Barger and codified by the legislature in Section 122-1F. The cause and prejudice standard does not implicate or call for application of Hodges or the gist standard or any of the standards that are used in evaluating an initial petition which has been filed, and that's evaluated under a different section of the Act governing initial petitions. Of course, I've filed a motion for leave to cite supplemental authorities, a couple of decisions that have reached that conclusion. And I'd also like to point out that the defendant's motion could not succeed under any formulation of the cause and prejudice standard, and as to his assertion of the prison lockdown as cause, the defendant actually alleged in his motion that the lockdown occurred after he filed his initial petition. So of course it could not furnish cause for failing to include this claim in his initial petition that he filed before the lockdown allegedly occurred. Also the cases that he cites in support of his lockdown argument involve a different section of the statute for excusing the late filing of an initial petition due to a lack of culpable negligence. Unlike in those cases, any prison lockdown occurred did not prevent the defendant from filing his initial petition, and also the state would know that this court disagrees with those decisions. It's held in the claim that a prison lockdown does not constitute a legitimate excuse for the inmates not filing a post-conviction petition in a timely fashion. Also I would like to address the defendant's reply brief. He says that he was prevented from including his claim in his initial petition by the lack of a fitness report. That claim was first made in the defendant's reply brief. We would not concede that the fitness report was not in the trial record. Whether or not it was has no bearing on whether the defendant established cause and prejudice because his claim was based on the actual fitness finding, not on any support for it. And that's the basic problem with his cause and prejudice, or cause argument, is that he relies on an alleged lack of support for his claim rather than any cause for being able to make his claim. Of course the standards, as everyone knows, for filing a first stage petition and judging that petition are quite low. The defendant could have made his claim in his initial petition, and if he lacked the documentation he could have explained why that documentation was not attached. The Act specifically provides for that. It's a very low standard and has not established anything that would constitute cause for failing to meet that low standard. Those are pretty much the points that I wanted to make besides what we have already argued in our brief. Unless the court has any further questions, we simply ask that you affirm. Okay, thank you counsel. Rebuttal please. Your Honors, the state argues that because the legislature made the distinction only with respect to certain age groups and with respect to certain crimes, it bears a rational relation. However, we know after Graham that you can't make distinctions between ages. These characterizations they made, they said, apply broadly to children as a class. And even the more horrific offenses that were at issue in Graham, Roper, and Miller and Jackson that are pending in the United States Supreme Court now, whether life without parole is appropriate for murder defendants, all involve horrific offenses. Nonetheless, the court is treating children differently, even when they've committed horrific offenses. So the legislature's distinction on age and offense is not enough if they're making additional characterizations under the age of 18 for juveniles. And the state also argues that JDB doesn't apply at all to this case because that dealt with Miranda. However, it's just a showing that the Supreme Court is moving forward and extending this beyond the Eighth Amendment. This analysis that kids are different is being applied beyond the Eighth Amendment context and should be applied in this context as well, where no consideration of a child's youth is ever taken into account before he's transferred to adult court and sentenced as an adult. Do your honors have any additional questions? It doesn't appear so, so thank you very much. Thank you. The case is submitted, and the court will stand in recess.